UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| KORY SIUJAN CLAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:08CV39 LMB |
| ) | |
| BOB SIMMONS, et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court upon the motion of plaintiff (registration no. 516775), an inmate at Eastern Reception, Diagnostic and Correctional Center, for leave to commence this action without payment of the required filing fee [Doc. #2]. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $22.42. *See* 28 U.S.C. § 1915(b)(1). Furthermore, based upon a review of the complaint, the Court finds that the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the

greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $112.08, and an average monthly balance of $71.93. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $22.42, which is 20 percent of plaintiff's average monthly deposit.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon

which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

In reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

**The Complaint**

Plaintiff brings this action pursuant to 42 U.S.C. §1983 alleging violations of his civil rights. Named as defendants are: Bob Simmons (Jail Administrator, Pemiscot County); Tommy Greenwell (Sheriff, Pemiscot County); Joe Bradshaw (Transport Officer); Donny Dodson (Correctional Officer) and Chris Colloen (Correctional Officer).

Liberally construing the complaint, plaintiff alleges the following facts. Plaintiff believes defendants Greenwell and Simmons acted unlawfully when they failed to respond to a grievance that they admit "got lost," and when they refused to give plaintiff a copy of his grievance, telling him that he should have made a copy prior to filing the grievance. Plaintiff also believes defendant Bradshaw failed to respond to a

grievance in a timely manner, which allowed an inmate that the prisoners in his pod "were having problems with" to stay in the pod. Plaintiff additionally complains that he does not believe there is a fair appellate process by which inmates can appeal grievances that have been denied.

Plaintiff claims that defendant Simmons "discriminated" against him by punishing him for accepting an extra hamburger patty at lunch. Plaintiff additionally claims that defendant Simmons metes out "more harsh punishments against black inmates than whites," although he has not provided examples of this alleged discriminatory behavior. Lastly, plaintiff claims that defendant Simmons has verbally harassed him, telling him that he needed to "grow up" and "quit whining."

Plaintiff asserts that defendants Simmons, Colloen and Bradshaw placed plaintiff in administrative segregation, without due process, as punishment for asking for a roll of toilet paper, which he did not have funds to pay for. Plaintiff claims that the cell he was placed in while in administrative segregation was unsanitary in that it smelled of urine and feces. Plaintiff asserts that during his time in administrative segregation he was not allowed to shower for several days.

Plaintiff claims that his medical treatment for a staph infection was delayed by four days by defendant Greenwell, although he admits that he received surgery and antibiotics for the infection and it "dried [the infection] up." Plaintiff has not alleged

that the delay in medical care adversely affected him. He merely alleges that since the first infection he occasionally suffers from unidentified "skin eruptions."

Plaintiff asserts that defendant Greenwell did not keep him entirely separated from one of his "enemies," causing them to run into one another for brief periods of time (such as in the hallway or at church services) on seven different occasions. Plaintiff does not claim that he was in any way harmed by these purportedly brief meetings. In fact, plaintiff admits that he and his enemy "talked things out."

Plaintiff additionally claims that defendant Greenwell allowed white inmates to have photographs of their family members but did not allow plaintiff, who is African American, to have pictures of his family unless they were Polaroids. Plaintiff believes that defendant Bradshaw also "plays favorites," allowing specific inmates to get to have their "hair net/doo-rag."

Plaintiff has not made any allegations of unlawful behavior on the part of defendant Dodson.

## Discussion

The complaint is silent as to whether defendants are being sued in their official or individual capacities. Where a "complaint is silent about the capacity in which [plaintiff] is suing defendant, [a district court must] interpret the complaint as including only official-capacity claims." *Egerdahl v. Hibbing Community College*, 72 F.3d 615,

619 (8th Cir.1995); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. To state a claim against a municipality or a government official in his or her official capacity, plaintiff must allege that a policy or custom of the municipality is responsible for the alleged constitutional violation. *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978). The instant complaint does not contain any allegations that a policy or custom of Pemiscot County was responsible for the alleged violations of plaintiff's constitutional rights. As a result, the complaint fails to state a claim upon which relief can be granted.

Even if plaintiff had brought this action against defendants in their individual capacities, the claims in his complaint would still be subject to dismissal for the following reasons.

Plaintiff's complaints regarding the jail's grievance process fail to state a constitutional deprivation because inmates do not have a constitutionally protected right to the grievance process. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991); *see also, Burnside v. Moser*, 138 Fed.Appx. 414 (3rd Cir. 2005). And, "a state grievance procedure does not confer any substantive constitutional right upon prison inmates." *Hoover v. Watson*, 886 F.Supp. 410, 418 (D.Del.1995).

Similarly, plaintiff's claims regarding the alleged four-day delay in receiving treatment for a staph infection fail to state a constitutional violation. When an inmate alleges that a delay in medical treatment constituted a constitutional deprivation, the objective seriousness of the deprivation is also measured by reference to the effect of the delay in treatment. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) *citing Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir.1997); *see also Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995). An inmate who complains that the delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. *Beyerbach*, 49 F.3d at 1326 *quoting Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir .1994). Plaintiff has not alleged that he was adversely affected by any alleged delay in his receipt of medical care. Based on this failure, he cannot state a claim for relief.

Similarly, plaintiff's claims against defendant Simmons for verbal harassment do not rise to the level required to establish a constitutional violation. *See, e.g., McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993); *King v. Olmsted*, 117 F.3d 1065, 1067 (8th Cir. 1997) (verbal harassment actionable only if it is so brutal and wantonly cruel that it shocks the conscience, or if the threat exerts coercive pressure on the plaintiff and the plaintiff suffers from a deprivation of a constitutional right).

Nor does the Court believe that plaintiff has established a *prima facie* case under 42 U.S.C. § 1983 with regard to his complaints about his time in administrative segregation. In order to establish a *prima facie* case, plaintiff must allege that the action occurred under color of law and that the action was a deprivation of a constitutional or federal statutory right. In order to prevail on a due process claim, the plaintiff must first show that he was deprived of life, liberty or property by government action. *Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998). Plaintiff has not alleged that he was deprived of life or property, and he has not identified a liberty interest which sustains his due process claim. The Supreme Court laid out the test for determining liberty interests in a prison setting in *Sandin v. Conner*, 515 U.S. 472 (1995):

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint, which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

In order to determine whether an inmate possesses a liberty interest, a court must compare the conditions to which the inmate was exposed in segregation with those he or she could "expect to experience as an ordinary incident of prison life." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). A court does not, however, consider the

procedures used to confine the inmate in segregation. *Phillips v. Norris*, 320 F.3d 844 (8th Cir. 2003) *citing Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) ("If Kennedy has a liberty interest, it is an interest in the nature of his confinement, not an interest in the procedures by which the state believes it can best determine how he should be confined.") Plaintiff's allegations do not indicate that he has suffered the type of atypical and significant hardship which might conceivably create a liberty interest. *See, e.g., Sandin*, 515 U.S. at 485-86 (no atypical and significant hardship where inmate spent thirty days in solitary confinement); *Hemphill v. Delo*, 124 F.3d 208 (8th Cir. 1997) (same; four days locked in housing unit, thirty days in disciplinary segregation, and approximately 290 days in administrative segregation); *Freitas v. Ault*, 109 F.3d 1335, 1337-38 (8th Cir. 1997) (same; ten days administrative segregation and "on-call" status, as well as loss of higher paying job and numerous privileges); *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) (same; ten days disciplinary detention and 100 days in maximum-security cell); *Moorman v. Thalacker*, 83 F.3d 970, 973 (8th Cir. 1996) (same; fifteen days of highest level disciplinary detention and 107 days of less-restrictive disciplinary detention). As a result, plaintiff's due process claim fails.

Nor can plaintiff's claims regarding his proximity to other inmates which he believes were "enemies" amount to a constitutional violation in this instance. To

prevail in a suit under 42 U.S.C. 1983, an inmate seeking damages from prison officials for subjecting him to cruel and unusual punishment by failing to protect him from assault by another inmate must show something more than mere inadvertence or negligence. *Andrews v. Siegel*, 929 F.2d 1326, 1330 (8th Cir. 1991) (quotations omitted). Plaintiff has not alleged that he was subjected to harm in the occasional and brief interactions he had with persons he believed to be his "enemies." Rather, he admits that he and his enemy "talked things out." Accordingly, his allegations don't rise to the level of a constitutional violation and fail to state a claim for relief.

Plaintiff's generalized claims of racial prejudice also fail to state a claim for relief. Although the Equal Protection Clause generally requires the government to treat similarly situated people alike, *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439(1985), dissimilar treatment of dissimilarly situated persons does not violate equal protection. *See Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 21 F.3d 237, 242 (8th Cir.1994). Thus, the first step in an equal protection case is determining whether the plaintiff has alleged that he was treated differently than others who were similarly situated to him. *See, e .g., Samaad v. City of Dallas*, 940 F.2d 925, 940-41 (5th Cir.1991). Plaintiff has not provided any specific allegations that he was treated differently than a similarly situated white inmate. Rather, he has claimed generally, and without examples, that defendant Simmons metes out "more harsh

punishments against black inmates than whites," and he has complained that **most** whites are allowed any kind of pictures, although he is only allowed Polaroids. These generalized allegations of racial prejudice fail to state a claim for relief.

Lastly, the Court notes that plaintiff has not made any specific allegations against defendant Dodson. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits). Plaintiff's failure to make specific allegations against defendant Dodson is fatal to his claims for relief against this defendant.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $22.42 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it:

(1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint because the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 6th day of May, 2008.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE